**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Limitless Mobile, LLC, | : | Case No. 16-12685(KJC) |
| | : | |
| Debtor. | : | |

## MOTION OF DEBTOR LIMITLESS MOBILE, LLC
## TO PAY CERTAIN PRE-PETITION PAYROLL, SEVERANCE, EMPLOYEE BENEFIT
## AND CONTRACTOR WAGE EXPENSES PURSUANT TO 11 U.S.C. §§ 105 AND 507

Limitless Mobile, LLC the above-captioned debtor and debtor-in-possession (the "Debtor"), by its undersigned proposed counsel, hereby moves this Court (the "Motion") for entry of an Order granting leave to pay certain pre-petition payroll, severance, employee benefit, contractor wages, related federal, state, and local payroll taxes, and related expenses, and in support thereof states as follows:

## JURISDICTION

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The Debtor consents to the entry of final orders or judgments of the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 363(b) and 507(a)(4) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code").

## **BACKGROUND**

5.      On December 2, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as debtor-in-possession and remains in possession of its assets.

6.      No official committee of unsecured creditors has been appointed.

7.      The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in detail in the *Declaration of Richard B. Worley* (the "First Day Declaration") filed on the Petition Date and incorporated herein by reference.

8.      The Debtor, successor to Keystone Wireless, LLC, is a Delaware corporation formed in 2013 with a mission to construct a broadband network and provide wireless telecommunications services to nine (9) rural and underserved counties located in central Pennsylvania.

9.      The Debtor has built a $40 million state-of-the-art 3G/4G LTE network that has increased access to reliable, high quality mobile phone and home internet services in rural areas.

10.     The Debtor is headquartered in Harrisburg, Pennsylvania and has several retail store locations in central Pennsylvania.

11.     The commencement of the Debtor's chapter 11 case was precipitated by continued, increased costs and delays in network buildout, which extended the required runway to profitability that could not be realized absent significant infusions of additional capital.

119298674_7

## THE DEBTOR'S EMPLOYEES

12.     Until December 1, 2016, the Debtor employed thirty-nine (39) people in full and part-time positions, as well as one (1) temporary worker engaged directly by the Debtor. Twenty (20) of the Debtor's employees were hourly and the remaining eighteen (18) were salaried.

13.     As of December 1, 2016, in an effort to reduce costs and in anticipation of scaling back its retail-side operations, the Debtor reduced its staff by seventeen (17) employees (the "Terminated Employees").[1]

14.     The Debtor's retail employees, in addition to their respective hourly wages or salary, can earn commissions based upon sales.

15.     Generally, the Debtor's employees are paid on the fifteenth (15th) and last day of each month (twenty-four pay cycles per year).

16.     Payroll is funded to Debtor's payroll service, PayChex, one business day in advance of pay day. PayChex charges a processing fee of approximately $400 for this service.

17.     All employees are paid via direct deposit by PayChex.

18.     PayChex also handles all payments to third-parties that arise from or relate to payroll (*e.g.*, withholdings and taxes).

19.     Historically, average monthly gross payroll expenses were $236,000, but this amount will decrease going forward due to the staff reductions described above.

20.     The Debtor's most recently closed pay period ended on November 30, 2016, was approximately $98,700 in the aggregate, and was funded and paid in the ordinary course of business.

---

[1] On December 1, the Debtor paid the Terminated Employees a total of $13,554.60, representing their accrued paid vacation time earned as of November 30.

119298674_7

21.     The Debtor's current pay period covers the period from November 25, 2016-December 11, 2016 and is payable on December 15 (the "December 15 Payroll"). The December 15 Payroll, which will also include commissions earned during the month of November, is estimated to be in the approximate gross amount of $115,651.27.[2]

22.     The Debtor also provides its employees with access to third-party insurance, including medical/prescription (United Healthcare PPO), dental (Metlife Dental), vision (Eye Med), workers compensation (Zenith Insurance), life/supplemental life (Lincoln Financial), and long-term disability (Lincoln Financial).

23.     The Debtor incurs costs on certain of the insurance plans on a monthly basis: medial ($13,378), dental ($540), vision ($232), and workers compensation ($1,981) (collectively, the "Insurance Benefits").[3]

24.     The Debtor has a 401(k) program for its employees, but the Debtor does not provide any matching or other contribution.

25.     Employee deductions per pay period for Insurance Benefits and 401(k) contributions have averaged $31,500.

26.     Due to the timing of the Debtor's petition for relief under chapter 11, the Debtor's employees, both current and former, have accrued as many as eight (8) days of pre-petition wages, Insurance Benefits, or similar compensation, as well as retail commissions for the month of November (collectively, the "Pre-Petition Payroll Obligations")[4].

---

[2] The December 15 Payroll can only be estimated at this time because the Debtor employs numerous hourly employees and it is not yet known how many hours they will work for the remainder of the current pay period.

[3] Employees also have the option of participating in a voluntary life/supplemental life insurance program, the monthly cost of which is deducted from their pay and issued by the Debtor to the insurer.

[4] In addition to Pre-Petition Payroll Obligations, the Debtor withholds and pays amounts for various federal, state, and local taxes which are due on account of the compensation earned by its employees during this same period (the "Withholding Obligations"). Historically, Withholding Obligations have averaged $32,600 per pay period.

119298674_7

27.     Under the Debtor's pre-existing policy, the Terminated Employees may also become entitled to severance pay based on their length of service to the Debtor (the "Severance Obligations").  In order to earn these payments, which range from $400 for most employees to $5,692.31 for one employee who has been with the Debtor for eight years, the Terminated Employee must sign an agreement that contains a release, non-disclosure, and non-disparagement clauses.  After a seven (7) day waiting period, if the employee does not elect to revoke the agreement, it becomes binding and the severance is earned.   Thereafter, the Terminated Employee will remain obligated to honor the release, non-disclosure and non-disparagement obligations contained therein. All seventeen Terminated Employees have now signed this agreement, and none have revoked it as of the date hereof.   The Severance Obligations total $14,972.31.

28.     Attached hereto as Exhibit A is a summary of the gross December 15 Payroll[5]. The Pre-Petition Payroll Obligations are also subject to employer tax matching for Social Security and Medicare at 7.65%.

## THE DEBTOR'S CONTRACTORS

29.     In addition to the above-referenced employees, the Debtor also receives services from six (6) contractors.

30.     One individual, who is the manager of human resources, has a contract with the Debtor and is paid generally on a bi-weekly basis.  She has submitted an invoice for the period from 11/28/2016-12/2/2016 in the amount of $3,176.39, which is payable immediately (the "HR Contractor Obligation").

---

[5] Pursuant to the agreements signed by the Terminated Employees, the Debtor has until 30 days from the expiration of the revocation period to pay the Severance Obligations, but seeks to include them in the December 15 Payroll.

31.     The remaining five individuals are contracted to one of two related non-debtor entities[6] and receive payment on a monthly basis.

32.     Because these individuals provide services to the Debtor as well as to these other entities, the Debtor is responsible for 75% of their gross base compensation, with the balance an obligation of the other, non-debtor entity for which the individual provides services.

33.     Since January 2016, the Debtor's share of this compensation had been accrued as an intercompany payable.  Prior year intercompany payables have been capitalised at the end of each year as additional members interests, extinguishing the balance.

34.     Since the end of August, the Debtor began paying its intercompany invoices as its affiliates did not have the funds to otherwise pay the contractors in full.

35.     On December 25th and 30th, the Debtor will again be obligated to pay these five contractors their monthly compensation.  These payments, as set forth in the attached Exhibit B, will include two (2) days of pre-petition wages (the "Contractor Obligations", and together with the Pre-Petition Payroll Obligations, the Severance Obligations and the HR Contractor Obligation, the "Obligations").

## RELIEF REQUESTED

36.     By this Motion, the Debtor seeks authority to pay or otherwise honor the Obligations that have arisen prior to the Petition Date, including all applicable Withholding Obligations and corresponding employer tax withholding obligations, and its portion of any Insurance Benefits.  The Debtor believes that, as of the Petition Date, the gross amount of the Obligations was approximately $81,635.82.   To the extent any other Obligations remain unfunded, or checks have not yet been presented, the Debtor hereby seeks authority to pay or

---

[6] Four individuals have contracts with Limitless Mobile Holdings, Inc. ("LMHI"), while one is contracted to Limitless Mobile Holdings LLC ("LMHLLC"), the parent of  both the Debtor and LMHI.

otherwise honor them, up to the statutory cap set forth in section 507(a)(4).

37.     Prompt payment of the Obligations is necessary to ensure the continued operation of the Debtor's business and to maintain the morale of its remaining employees and contractors in an already difficult time, many of whom would suffer significant hardship and further difficulty if there is a sudden interruption of their wages and benefits.

38.     Payment of the Withholding Obligations is also crucial in order for Debtor to remain current with the relevant taxing authorities.

## BASIS FOR RELIEF

**A.      Sufficient Cause Exists to Authorize Debtor to Honor the Obligations Pursuant to Section 105(a) of the Bankruptcy Code.**

39.     The Court may authorize payment of pre-petition claims in appropriate circumstances based on Section 105(a) of the Bankruptcy Code.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("Certain pre-petition claims by employees . . . may need to be paid to facilitate a successful reorganization.  Section 105(a) of the Code provides a statutory basis for the payment of pre-petition claims.").

40.     Section 105(a), which embodies the inherent equitable powers of the Court, empowers it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

41.     Under Section 105(a), this Court may permit pre-plan payments of pre-petition obligations when essential to the continued operation or reorganization of the debtor's business pursuant to the "necessity of payment" doctrine.  *See In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the

7

business until their pre-reorganization claims have been paid"); *Just for Feet, Inc.*, 242 B.R. at 824 (noting that, in the Third Circuit, a debtor may pay pre-petition claims that are essential to continued operation of its business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

42.     The rationale for the necessity of payment rule—the rehabilitation of a debtor in bankruptcy reorganization—is aligned with the principal purpose and goal of Chapter 11. *See, e.g.*, *Just For Feet*, 242 B.R. at 826 (finding that payment of pre-petition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of pre-petition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process."); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateauguay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of pre-petition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately").

**B.      The Obligations are Entitled to Priority Under 11 U.S.C. § 507(a)(4) and (5).**

43.     All of the Obligations that the Debtor hereby seeks to pay are entitled to priority treatment under section 507 of the Bankruptcy Code. *See* 11 U.S.C. § 507(a)(4), (5).

44.     Specifically, the Obligations are entitled to the priority given to claims for "wages … including vacation, severance and sick leave pay earned by an individual" within the 180 days immediately preceding the Petition Date (up to a maximum of $12,475 for each individual).[7] 11

---

[7] In the event that any employee's claim should exceed the statutory cap, the Debtor, pursuant to the relief sought in this Motion, would only pay such claims up to the $12,475 statutory maximum per employee.

U.S.C. § 507(a)(4)(A).

45.     Such priority claims must be paid in full under a confirmed chapter 11 plan and, thus, granting the relief sought herein would simply mean accelerating the timing of plan payments and minimizing disruption to the Debtor's business as it transitions into chapter 11. *See* 11 U.S.C. § 1129(a)(9)(B).

46.     Courts in chapter 11 cases routinely approve immediate payment of pre-petition employee wage claims, including vacation, severance, and sick leave pay, up to the statutory priority, on the theory that such wages must be paid in full in any event under a confirmed plan. *See, e.g.*, *In re Tropicana Entm't, LLC*, No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008); *In re Leiner Health Prods. Inc.*, No. 08-10446 (KJC) (Bankr. D. Del. April 9, 2008); *In re Wickes Holdings, LLC*, No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); *In re Tweeter Home Ent. Group, Inc.*, No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); *In re Pope & Talbot, Inc.*, No. 07-11738 (CSS) (Bankr. D. Del. Nov. 21, 2007); *In re Hancock Fabrics, Inc.*, No. 07-10353 (BLS) (Bankr. D. Del. Mar. 22, 2007).

47.     It is imperative that the Debtor maintains its relationship with its employees so that it may continue to provide essential services to its customers and maintain normal operations as much as possible while it pursues restructuring.

48.     Failure to continue uninterrupted payments of employee wages and benefits would have a detrimental impact on employee morale in an already difficult time that could result in immediate loss of employees and adversely impact the services provided by Debtor.

49.     If remaining employees abruptly terminate their employment, it may be difficult and time-consuming for Debtor to replace this critical staff, and the quality and stability of Debtor's operations will likely suffer as a result, having a negative effect on the value of the

estate's assets.

50.     Additionally, failure to timely pay the Obligations would likely result in hardship for many of the employees, both current and former, and their families.

51.     Therefore, permitting timely and uninterrupted payment of the Obligations is in the Debtor's best interest as well as in the best interests of the estate and its stakeholders.

52.     The Debtor further requests authority to exclude from its schedules of unsecured and priority creditors those persons who will be paid pursuant to this Motion on account of the Obligations.

## NOTICE

53.     The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for any secured creditors believed to be claiming an interest in cash collateral; (c) the United States Attorney for the District of Delaware; (d) the Internal Revenue Service; (e) the Pennsylvania Department of Revenue; (f) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (g) all parties entitled to notice pursuant to Local Rule 9013-1(m) via electronic or overnight mail, as appropriate

**WHEREFORE**, the Debtor requests that this Court enter an Order permitting the Debtor to: (i) pay all Obligations that have arisen prior to the Petition Date, subject to the priority limitations set forth in 11 U.S.C. § 507(b)(4) and (5); (ii) pay all federal, state, and local payroll-related taxes, deductions, and withholdings in connection with the foregoing; (iii) pay all sums necessary to satisfy the Debtor's obligations described above; (iv) exclude all of the Debtor's employees whose claims are to be paid hereunder from the schedules and list of creditors required to be filed pursuant to the Bankruptcy Code; provided however, that the Debtor

maintains the right to file amended schedules listing such parties, if future circumstances so require; and that the Court grant such other and further relief as is just and proper.

Dated: December 7, 2016

/s/ Jesse N. Silverman

**DILWORTH PAXSON LLP**
Martin J. Weis
Jesse N. Silverman
One Customs House – Suite 500
704 King Street
P.O. Box 1031
Wilmington, DE 19801
Telephone: (302) 571-9800
Facsimile: (302) 571-8875

-and-

**DILWORTH PAXSON LLP**
Lawrence G. McMichael
Catherine G. Pappas
Erik L. Coccia
*Pro hac vice admissions requested*
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200

*Proposed Counsel for the Debtor and Debtor in Possession*

119298674_7